**SIGNTECH USA, LTD.,**
**Plaintiff–Appellant,**

v.

**VUTEK, INC., Defendant–Appellee.**

**No. 98–1171.**

United States Court of Appeals,
Federal Circuit.

April 8, 1999.

David G. Wille, Baker & Botts, L.L.P., of Dallas, Texas, argued for plaintiff-appellant. With him on the brief were William

D. Harris, Jr. and Michael W. Piper, Locke Purnell Rain Harrell, P.C., of Dallas, Texas.

John M. Skenyon, Fish & Richardson P.C., of Boston, Massachusetts, argued for defendant-appellee. With him on the brief was Jolynn M. Lussier. Of counsel was Francis X. Gindhart, of Washington, D.C.

Before MAYER, Chief Judge, NEWMAN, and RADER, Circuit Judges.

RADER, Circuit Judge.

Signtech USA, Ltd. (Signtech) sued Vutek, Inc. (Vutek) for infringement of its U.S. Patent No. 5,376,957 (the '957 patent) involving ink jet printers for printing large signs. Vutek counterclaimed for infringement of its U.S. Patent No. 4,914,522 (the '522 patent). These claims were tried by consent before a United States magistrate judge in the United States District Court for the Western District of Texas. The magistrate denied Signtech's claims for infringement of the '957 patent. On Vutek's counterclaim, Signtech stipulated to infringement of the '522 patent if valid. The magistrate found the '522 patent valid and, in addition, found Signtech's infringement of the '522 patent willful. Signtech and Vutek stipulated to basic damages of $140,000 which the magistrate trebled for willful infringement under 35 U.S.C. § 284. The magistrate awarded $420,000 in enhanced damages plus $28,818 in prejudgment interest and attorney fees. The judgment, however, added the $420,000 enhanced damages to the stipulated $140,000 basic damages award. The magistrate also entered an injunction prohibiting Signtech from "any further infringement of the '522 patent."

Signtech appeals the finding of non-infringement of the '957 patent, the amount of damages awarded for infringement of the '522 patent, and the vagueness of the injunction. Because the magistrate correctly found that Vutek did not infringe the '957 patent, this court affirms. However, because 35 U.S.C. § 284 (1994) allows a maximum damage award of three times the amount of the basic damage award, the $420,000 enhanced damages award for infringement of the '522 patent must include the $140,000 basic damages award. Finally, because, based on this record, the terms of the permanent injunction do not violate the specificity requirements of Fed.R.Civ.P. 65(d), this court affirms.

I.

The '957 patent discloses an ink jet printer with an improved ink sprayhead design. The improved sprayhead prints an image and its mirror image on opposite sides of a substrate. This dual-sided mirror image technique facilitates the printing of backlit signs and billboards. With ink applied to both sides of a substrate, backlit signs do not appear washed out when illuminated.

The claimed ink sprayhead design features one pressurized air source to control ink delivery onto the substrate and a second low-volume, high pressure air source to continuously clean the ink nozzle during printing. The prior art ink sprayheads, including those of the '522 patent, contain only a single, pulse-width modulated air source for delivery of the ink to the substrate and lack a second, high pressure air source for cleaning the nozzles.

According to the '957 patent, the second air source facilitates continuous printing of large signs without color variations or clogging of the nozzles. The '957 patent states that the prior art (specifically the '522 patent) "is incapable of producing an enlarged image having the desired color scheme" because it lacks this second, high pressure air source. Col. 2, ll. 33–36. See also, col. 2, ll. 10–22. Both the dual-sided mirror image printing technique and the dual air source ink sprayhead are novel features of the '957 patent. Claim 1, the only independent claim in the '957 patent, claims:

1. An apparatus for reproducing an image on a first side of a substrate and a mirror image on a second side of said substrate, comprising:

a frame;

*means for generating control signals* representative of said image;

*ink delivery means* positioned on opposite sides of said substrate, said ink delivery means fluidly communicating with an ink source;

means mounted on said frame for supporting said ink delivery means;

means mounted on said frame for driving said ink delivery means relative to said substrate; and

*means,* responsive to said control signals, *for controlling said ink delivery means* to produce said image on said first side of said substrate and said mirror image on said second side of said substrate.

(emphasis added).

As required by statute, the magistrate interpreted these means-plus-function elements by referring to the structure described in the patent specification for performing the recited functions. *See* 35 U.S.C. § 112, ¶ 6 (1994). Specifically, the magistrate limited "ink delivery means" to an ink sprayhead containing a "second, high pressure air source." The magistrate primarily based this limitation on the background and summary of the invention sections of the '957 patent which distinguished the invention from the prior art, including the '522 patent. The '957 patent describes its improvement over the prior art by emphasizing its use of two air sources – one for applying the ink and one for removing excess ink from the nozzles. In particular, the '957 patent states explicitly that the ink delivery system of the '522 patent is "incapable of producing an enlarged image having the desired color scheme" because of its lack of a second air source for cleaning the nozzles. Col. 2, ll. 33–36. The magistrate therefore concluded:

> By consistently describing its invention—in the Abstract, Background of Invention, Summary of Invention, and Detailed Description sections of the specifications—as one that solves the ink accumulation problem inherent in the prior art, the ink delivery means

cannot be interpreted apart from the essential, cleaning, high-pressure air source.

Vutek's allegedly infringing printers use ink sprayheads identical to those embodied in the '522 patent and therefore contain only a single, pulse-width modulated air source. Consequently, based on the foregoing interpretation, the magistrate determined that Vutek's device did not literally infringe the '957 patent because it lacked the second, high-pressure air source required by the "ink delivery means" of claim 1.

Having found one element of the claim missing from the accused device, the magistrate could have concluded the literal infringement analysis. However, the magistrate proceeded to address the "means for generating control signals" and "means for controlling the ink delivery means." Because, as set forth below, this court agrees with the magistrate's finding concerning the lack of "ink delivery means" in the accused device, as required by claim 1 of the '957 patent, this court need not address the other means-plus-function claim limitations.

On Vutek's counterclaim against Signtech for infringement of its '522 patent, Signtech stipulated to infringement of the '522 patent, if valid. Signtech also stipulated to basic damages of $140,000 as part of the Pretrial Order. The magistrate determined that the '522 patent was valid and also found that Signtech had willfully infringed. The magistrate therefore trebled the damage award to $420,000 and added pre-judgment interest as well as costs and attorney fees. Those findings are not before this court on appeal. In its judgment, however, the magistrate's wording apparently awarded $420,000 enhanced damages in addition to the basic $140,000 damage award, stating that Vutek "is entitled to a basic damage award of $140,000 for infringement of the '522 patent, pre-judgment interest … plus enhanced damages of $420,000 for [Signtech's] willful infringement." The parties have resolved

this issue by agreeing that the $420,000 enhanced damages should include the $140,000 basic damage award, in accordance with the statutory requirements of 35 U.S.C. § 284 as interpreted by this court's case law.

The magistrate also entered a permanent injunction against Signtech "for any further infringement of the '522 patent." Signtech complains that the terms of this injunction violate Fed.R.Civ.P. 65(d) which provides specificity requirements for injunctions.

## II.

■ This court reviews the magistrate's construction of the patent claims without deference. *See Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1454–56, 46 USPQ2d 1169, 1172–75 (Fed. Cir.1998) (en banc); *Markman v. Westview Instruments, Inc.* 52 F.3d 967, 979, 34 USPQ2d 1321, 1329 (Fed.Cir.1995) (en banc), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Although the standard of review for the issuance and scope of an injunction is abuse of discretion, *see Joy Technologies, Inc. v. Flakt, Inc.*, 6 F.3d 770, 772, 28 USPQ2d 1378, 1380 (Fed.Cir.1993), whether the terms of the injunction fulfill the mandates of Fed. R.Civ.P. 65(d) is a question of law that this court reviews *de novo. See Additive Controls & Measurement Sys. Inc. v. Flowdata Inc.*, 986 F.2d 476, 479–80, 25 USPQ2d 1798, 1801 (Fed.Cir.1993).

■ The magistrate correctly interpreted the "ink delivery means" limitation of claim 1 of the '957 patent. Title 35 of the United States Code, section 112, ¶ 6, states that

> [a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

Typically, if the word "means" appears in a claim element in combination with a function, it is presumed to be a means-plus-function element to which § 112, ¶ 6 applies. *See Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1427, 44 USPQ2d 1103, 1109 (Fed.Cir.1997); *Greenberg v. Ethicon Endo–Surgery, Inc.*, 91 F.3d 1580, 1583, 39 USPQ2d 1783, 1785 (Fed.Cir. 1996). However, according to the language of the statute, § 112, ¶ 6 governs only claim elements that do not recite sufficient "structure, material, or acts in support [of the means or step-plus-function element]." 35 U.S.C. § 112, ¶ 6. *See Sage,* 126 F.3d at 1427.

In this case, the claim element "ink delivery means" uses the term "means" in association with a function, namely "ink delivery." Although the phrase "means for" is not used, the phrase "ink delivery means" is equivalent to the phrase "means for ink delivery," because "ink delivery" is purely functional language. Furthermore, the claim does not recite disqualifying structure which would prevent application of § 112, ¶ 6. The magistrate therefore correctly applied § 112, ¶ 6 to the interpretation of this claim element.

■ The "ink delivery means" of the preferred embodiment described in the specification expressly includes a second, high pressure air source. Although patentees are not necessarily limited to their preferred embodiment, *see Serrano v. Telular Corp.*, 111 F.3d 1578, 1583, 42 USPQ2d 1538, 1542 (Fed.Cir.1997), interpretation of a means-plus-function element requires this court to consult the structure disclosed in the specification, which often, as in this case, describes little more than the preferred embodiment. Furthermore, although the magistrate looked to the structure of the preferred embodiment to help determine the scope of the "ink delivery means" element, the magistrate's interpretation did not rely solely on that part of the specification. In particular, the magistrate also looked to the background and summary of the invention sections of the specification which describe the improvements of the ink delivery means of

this invention over the prior art (including the accused ink delivery structure of Vutek's '522 patent). These sections of the specification, in addition to the disclosure of the preferred embodiment, led the magistrate to conclude that the "ink delivery means" of claim 1 was limited to an ink sprayhead having a second, high pressure air source.

Specifically, the summary of the invention section of the '957 patent states that the invention "is capable of producing a sectioned image on the substrate in one continuous print because its sprayhead design prevents ink jet clogging." Col. 3, ll. 26–28. The specification attributes this unique capability to the invention's use of two separate air sources—one pulse-width modulated air source for controlling delivery of the ink to the substrate and a second low-volume, high pressure air source for continuous cleaning of the ink jets. *See* Col. 3, ll. 29–48. Additionally, in the background section, the specification of the '957 patent explains that "the design of the '522 patent is such that the ink accumulation is not prevented. The '522 patent does not solve the ink accumulation problem because it uses a single constant air pressure source." Col. 2, ll. 12–15. The '957 patent specification goes on to declare that "the system disclosed in the '522 patent is incapable of producing an enlarged image having the desired color scheme." Col. 2, ll. 34–36. The accused ink delivery structure in Vutek's printers is identical to the structure described in the '522 patent—a structure explicitly distinguished by the '957 patent.

■ By choosing means-plus-function language to recite the "ink delivery means" claim element, the patentee necessarily restricted the scope of this element to the structure disclosed in the specification and its equivalents. Furthermore, by stating that the accused structure was "incapable" of achieving the desired results of the invention, the patentee expressly excluded it as an equivalent of the disclosed structure. Because § 112, ¶ 6 requires a court to interpret a means-plus-function claim according to the structure disclosed in the specification and its equivalents, the magistrate's limitations on claim scope, with reference to the preferred embodiment and the explicit disavowal of prior art structure, correctly construed the invention.

■ Hoping to rescue itself from this unfortunate predicament, Signtech points to a portion of the '957 patent specification describing an alternative "ink delivery means" (shown in Fig. 8) which does not include the second, high pressure air source. *See* col. 10, ll. 30–47. This alternative embodiment is significantly different than Vutek's accused device, however. Specifically, the ink sprayhead embodiment of Fig. 8 uses a single constant air flow and a pulse-width modulated ink flow to control delivery of the ink to the substrate. Vutek's accused device, on the other hand, uses pulse-width modulated constant pressure air flow to control ink delivery. Signtech's alternative structure is therefore so different from Vutek's accused device that no reasonable jury could find it an equivalent structure. Thus, even if this court interpreted the "ink delivery means" element of claim 1 to include this alternative embodiment, it would not cover the accused structure.

Signtech also points to the prosecution history in an effort to redeem its choice of claim language. Specifically, Signtech identifies a species restriction requirement in the parent application of the '957 patent. During the prosecution of the application which became U.S. Patent No. 5,294,946 (the '946 patent) (parent application to the '957 patent), the patent examiner directed Signtech to select one set of claims from the following three possible inventions described in the application:

A. A single side ink jet printer with two pressure flows to propel the ink and maintain cleanliness of the nozzles, claims 1–6, 27–32.

B. A two side ink jet printer, claims 18–20.

C. A two side ink jet printer with two pressure flows to propel the ink and maintain cleanliness of the nozzles, claims 7–17, 21–26.

Signtech argues that the '946 patent embodied the election of species C, while the '957 patent was the result of a continuation application directed toward species B. Specifically, Signtech contends that it expressly included claim elements for the dual air sources in the '946 patent application but intentionally removed them from the claims of the '957 patent application. Therefore, Signtech argues, it is unfair to limit the claims of the '957 patent to an invention elected for prosecution in an earlier application when the examiner explicitly required separation into separate applications.

Although the prosecution history serves as a tool for claim interpretation, see In re Hayes Microcomputer Products, Inc. Patent Litigation, 982 F.2d 1527, 25 USPQ2d 1241 (Fed.Cir.1992), the statutory requirements of 35 U.S.C. § 112, ¶ 6 nonetheless apply to means-plus-function claims. The specification limits the meaning of means-plus-function claim elements; and in this case, the specification expressly limits the invention in the manner described previously.

Thus, this decision, like many others emanating from this court, see Sage, 126 F.3d at 1425, emphasizes the importance of careful language choices in the specification and, particularly, in the claims. To avoid having its claims limited to exclude the embodiments disclaimed in the specification, the claim drafter for this patent might have chosen language to avoid application of 35 U.S.C. § 112, ¶ 6. Otherwise, assuming that no intervening statutory bars had arisen, Signtech could have filed a new application directed toward the species B invention without limitation in the specification or claims to the dual air sources. It did neither. Therefore, because of the statutory limitations governing the meaning of means-plus-function elements, courts must limit the scope of these claim elements to the corresponding structure disclosed in the specification and

its equivalents. Signtech's arguments are therefore unavailing and this court affirms the magistrate's interpretation of the "ink delivery means."

Literal infringement of the '957 patent requires that the accused device contain each of the claim elements and their recited limitations. See Mannesmann Demag Corp. v. Engineered Metal Prods. Co., 793 F.2d 1279, 1282, 230 USPQ 45, 46 (Fed.Cir.1986). Because Vutek's device lacks the required "ink delivery means" element, Signtech cannot show literal infringement of claim 1 of the '957 patent. This court need not address, therefore, the magistrate's interpretation of the "means for generating control signals" and "means for controlling the ink delivery means" elements. Signtech did not present any evidence regarding infringement under the doctrine of equivalents. This court therefore affirms the magistrate's finding that Vutek did not infringe the '957 patent.

## III.

■ · Title 35 of the United States Code, section 284 provides statutory authority for damage awards in patent cases:

Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement. . . .

When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed.

After a finding of willful infringement, the district court enjoys discretion to choose whether to award enhanced damages to the claimant and in what amount. See Read Corp. v. Portec, Inc., 970 F.2d 816, 826, 23 USPQ2d 1426, 1434–35 (Fed.Cir. 1992). This discretion, however, is limited to a trebling of the basic damage award. See Amsted Indus. Inc. v. Buckeye Steel Castings Co., 24 F.3d 178, 183, 30 USPQ2d 1462, 1466 (Fed.Cir.1994). The maximum amount of damages allowed by statute is

therefore three times the amount of the basic damage award. *See American Med. Sys., Inc. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1532, 28 USPQ2d 1321, 1326 (Fed. Cir.1993).

Recognizing this court's interpretation of the statute, Vutek and Signtech agree that the $420,000 enhanced damages award for Signtech's willful infringement of the '522 patent should include the stipulated $140,000 basic damage award. Therefore, this court merely clarifies that the $140,000 damage award is included within the $420,000 enhanced damage award.

### IV.

Signtech argues that Fed. R.Civ.P. 65(d) requires revision of the injunction in this case. A permanent injunction requires "specific terms" and a description "in reasonable detail [of] the acts sought to be restrained." *Additive Controls*, 986 F.2d at 479. In this case, the magistrate's order establishes "a permanent injunction against [Signtech] for any further infringement of the '522 patent." Signtech argues that this language purports to permanently enjoin Signtech from producing any product which might infringe the '522 patent and is not limited to the products found to infringe or colorable variations thereof. This court has explained that Fed.R.Civ.P. 65(d) requires specificity in injunctions to prevent unwarranted contempt actions and provide adequate notice of the conduct enjoined. *See id.*, at 479–80. Here, any danger of unwarranted contempt actions is minimal, if not completely non-existent, because of the detailed record on which this injunction was entered. Therefore, this court finds no danger in allowing the permanent injunction to stand as written. This decision, of necessity, leaves open whether a later device produced by Signtech, which is more than trivially different from the devices found to infringe, is within the scope of the '522 patent claims and therefore an infringing device.

### COSTS

Each party shall bear its own costs.

*AFFIRMED–IN–PART and REVERSED–IN–PART.*