**JENERIC/PENTRON, INC. Plaintiff,**

**v.**

**DILLON COMPANY, INC., Chemichl, Inc., and Chemichl AG. Defendants.**

**Nos. 3:98 CV 818 EBB, 3:99 CV 1775 EBB.**

United States District Court, D. Connecticut.

April 15, 2003.

See also 171 F.Supp.2d 49.

Mark Richard Kravitz, Wiggin & Dana, New Haven, CT, William J. Speranza, Wiggin & Dana, Stamford, CT, Michael A. Cantor, William J. Cass, Michael J. Rye, Cantor & Colburn, Bloomfield, CT, for Plaintiff.

Peter K. Sommer, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY, Alan Robert Baker, Baker O'Sullivan & Bliss PC, Wethersfield, CT, Matthew F. Medeiros, Little, Bulman, Medeiros & Whitney, Providence, RI, William J. O'Sullivan, Baker O'Sullivan & Bliss PC, Wethersfield, CT, for Defendants.

### Ruling on Plaintiff's Motion for Permanent Injunction

ELLEN B. BURNS, Senior District Judge.

Before the Court is Plaintiff Jeneric/Pentron, Inc.'s ("Jeneric/Pentron") motion for entry of a permanent injunction against all three defendants, Dillon Company, Inc., Chemicl, Inc. and Chemicl AG ("Defendants"). Pursuant to 35 U.S.C. § 283, Jeneric/Pentron moves to prevent future infringement of the asserted patents, U.S. Patent No. 5,653,791 ("'791 patent") and U.S. Patent No. 5,944,844 ("'844 patent"). For the reasons discussed below, the Court hereby GRANTS *Plaintiff's Motion for Permanent Injunction* [Doc. No. 207].

### I. BACKGROUND

The general history of this case has been fully set forth in prior rulings and, for the purposes of this ruling, is presumed and will not be exhaustively repeated herein. Accordingly, the Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, this motion.

On May 24, 2002, the jury in this matter returned its verdict in which it concluded the following: that Dillon's Cerpress product infringes claims 1 and 2 of Jeneric/Pentron's '791 patent under the doctrine of equivalents; that Dillon's Sensation product infringes claims 1 and 2 of the '791 patent under the doctrine of equivalents; that Dillon's Sensation product literally infringes claim 1 of Jeneric/Pentron's '844 patent; and that Defendants had not proven that U.S. Patent No. 4,604,366 ("'366 patent") anticipated either the '791 patent or the '844 patent.

Despite these findings, however, Defendants escaped liability because of the jury's final finding that Defendants had proven that the '791 and '884 patents were anticipated by the public use of LF–PFM prior to the "critical date" of March 12, 1995. According to Defendants, LF–PFM, which Defendants claimed was the same as LF–1–PFM, was repackaged and sold by Dillon as Cerpress and Sensation.

Following post-trial discovery, Jeneric/Pentron moved for a new trial on the discrete issue of Defendants' affirmative defense of public use. Jeneric/Pentron also requested that the Court impose sanctions against Defendants for their discovery misconduct.

On February 27, 2003, the Court granted Jeneric/Pentron's motion for sanctions and struck Defendants' affirmative defense of public use. *See Ruling*, February 27, 2003 [Doc. No. 205]. Given both the jury's original findings and the Court-imposed sanction, Jeneric/Pentron's motion for a new trial on the public use was no longer necessary, although otherwise justified.

In an Order dated the same day, the Court directed the parties to submit, jointly, if possible, a proposed schedule for discovery pertaining to the trial on damages that became necessary once the Court issued its ruling. *See Order,* February, 27, 2003 [Doc. No. 206]. Shortly thereafter, Jeneric/Pentron filed its present motion for a permanent injunction.

## II. *STANDARD FOR ISSUING A PERMANENT INJUNCTION*

Under 35 U.S.C. § 283, "The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." *Id.* As noted by the Federal Circuit, "it is the general rule that an injunction will issue when infringement has been adjudged, absent a sound reason for denying it." *Richardson v. Suzuki Motor Co.,* 868 F.2d 1226, 1247 (Fed.Cir.1989). Indeed, "[a]lthough the district court's grant or denial of an injunction is discretionary depending on the facts of the case, injunctive relief against an adjudged infringer is usually granted." *W.L. Gore & Associates, Inc. v. Garlock, Inc.,* 842 F.2d 1275, 1281 (Fed.Cir.1988) (internal citations omitted); *see also Richardson,* 868 F.2d at 1246–47 ("Infringement having been established, it is contrary to the laws of property, of which the patent law partakes, to deny the patentee's right to exclude others from use of his property."). That being said, whether to grant an injunction is left to the discretion of the district court after considering the equities of the particular case. *See Roche Products, Inc. v. Bolar Pharmaceutical Co.,* 733 F.2d 858, 866 (Fed.Cir.1984).

## III. *DISCUSSION*

Jeneric/Pentron offers four factors it feels are appropriate for the Court to analyze when considering the equities in this matter. Those factors are whether the patentee would be irreparably harmed without an injunction, whether the patentee has an adequate remedy at law, whether granting the injunction is in the public interest, and whether the balance of hardships favors an injunction. *See Plaintiff's Reply* at 2–7 [Doc. No. 214]. Defendants offer considerations of their own in opposing the issuance of an injunction, namely, that Jeneric/Pentron is not practicing the invention, that Defendants have a number of substantive issues for appeal, and that the issuance of an injunction is not proper because of due process concerns. *See Defendants' Opposition* at 3–8 [Doc. No. 212].

As noted above, the Court is to consider the "equities of the particular case," *see Roche Products, Inc.,* 733 F.2d at 866, and need not give each factor equal weight. With this in mind, the Court now considers each of the above-mentioned factors.

1. *Whether Jeneric/Pentron Will Suffer Irreparable Harm Absent an Injunction*

The Federal Circuit has held that "[i]n matters involving patent rights, irreparable harm has been presumed when a clear showing has been made of patent validity and infringement." *Richardson,* 868 F.2d at 1247 (citing *Smith Int'l, Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 1581 (Fed.Cir. 1983)). In addition to arguing that this presumption of irreparable harm should apply here, Jeneric/Pentron further argues that, even without a presumption of irreparable harm, the actual danger of irreparable harm to Jeneric/Pentron is compelling.

Here, a "clear showing" of patent infringement has been made by virtue of the jury's verdict that Defendants' products infringe the asserted claims of the patents in question. In addition, a "clear showing"

of patent validity has been made by virtue of, *inter alia,* the jury's rejection of Defendants' claim that the '366 patent "anticipated" Jeneric/Pentron's patents in question, as well as the Court's recent striking of Defendants' public use defense. As to the latter, the Court emphasized in its ruling that while the imposed sanction obviated the need for a new trial, the new evidence would probably result in a different outcome on the claim of public use. Thus, the Court finds that the presumption of irreparable harm applies.

Furthermore, the Court finds compelling Jeneric/Pentron's other claims of irreparable harm that would flow from the Court's failure to enter a permanent injunction at this time. For example, there are strong indications that Defendants will be unable to compensate Jeneric/Pentron for any losses incurred. Jeneric/Pentron supports this argument based on Defendants' counsel's own representation that Defendants are "not going to be able to get a bond" should Defendants' desire to stay any injunction entered by the Court. *See Transcript, Chambers Conference,* March 14, 2003 at 8. Further complicating the recovery of any present and future damages is the fact that Chemicl AG is a foreign company located in the Principality of Liechtenstein.

In their opposition to the entering of a permanent injunction, Defendants do not offer evidence traditionally used to rebut a presumption of irreparable harm. *See Polymer Technologies, Inc. v. Bridwell,* 103 F.3d 970, 974 (Fed.Cir.1996) (noting some examples of evidence found sufficient for showing lack of irreparable harm, including "evidence that future infringement was no longer likely, that patentee was willing to forego its right to exclude by licensing patent, or that patentee had delayed in bringing suit"). Rather, as discussed below, Defendants claim, *inter alia,*

that their substantive issues for appeal militate against the Court entering a permanent injunction at this time. Such an argument fails to adequately rebut this Court's finding of irreparable harm, presumed or not. Thus, the Court finds that Jeneric/Pentron will be irreparably harmed absent an injunction in this case.

2. *Whether Jeneric/Pentron Has an Adequate Remedy at Law Concerning Future Infringement*

Future infringement, as noted by the Federal Circuit, "may have market effects never fully compensable in money." *Reebok Int'l Ltd. v. J. Baker, Inc.,* 32 F.3d 1552, 1557 (Fed.Cir.1994) (citing *Hybritech Inc. v. Abbott Laboratories,* 849 F.2d 1446, 1457 (Fed.Cir.1988)). Even assuming compensability, it is unclear whether Defendants could adequately compensate Jeneric/Pentron for any injury it incurs. Thus, this factor weighs in favor of granting a permanent injunction at this time.

3. *Whether the Public Interest Favors Injunctive Relief*

The Federal Circuit stresses that "the focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Hybritech,* 849 F.2d at 1458. Here, Jeneric/Pentron argues that "there is no public interest, much less a 'critical' public interest, which would be served by denying Jeneric/Pentron's Motion for Permanent Injunction." *Plaintiff's Reply* at 7.

Contrary to Defendants' claim that Jeneric/Pentron is not practicing the invention, *see Defendants' Opposition* at 3 (arguing that "the consumer would lose because of Jeneric's inability to supply a product equivalent to that which would be enjoined"), the record reveals that Jeneric/Pentron does sell products which are

covered by the patents-in-suit. *See Plaintiff's Reply* at 7 (referring to Plaintiff's Answers to Defendants' First Set of Interrogatories, which attest that its products "Avante" and "Synspar Softspar" are covered by the patents-in-suit).

In light of Jeneric/Pentron's apparent ability to supply the market that might otherwise be frustrated by the Court's issuance of an injunction, the Court finds that there is no public interest that would be injured by the grant of injunctive relief. Moreover, the Court recognizes the general principle that "there exists a public interest in protecting rights secured by valid patents." *Hybritech,* 849 F.2d at 1458. Thus, the Court concludes that this factor weighs in favor of granting a permanent injunction at this time.

### 4. *Defendants' Substantive Issues for Appeal*

In their opposition, Defendants argue that Jeneric/Pentron's motion for a permanent injunction should be denied because, *inter alia,* Defendants have a number of substantive issues for appeal. *See Defendants' Opposition* at 3–7. In their reply, Jeneric/Pentron contend that Defendants' argument is not relevant to the Court's consideration of whether a permanent injunction should be granted. *See Plaintiff's Reply* at 8–9.

Defendants cite no authority indicating that this Court, when addressing a motion to permanently enjoin, should consider the quality of Defendants' appellate issues. Indeed, the Court finds no such authority. In considering whether to grant a *stay* of an injunction, pending appeal, the Federal Circuit commands that trial courts consider the traditional stay factors, including whether the stay applicant has made a strong showing that he is likely to succeed on the merits. *See Standard Havens Prod. v. Gencor Indus.,* 897 F.2d 511, 512 (Fed.Cir.1990). Should the Court, when considering whether to grant a permanent injunction in the first instance, assess whether Defendants have made a strong showing that they are likely to succeed on the merits, the result would be to collapse two distinct analytical standards into one.

Regardless, however, of whether it is appropriate at this time for the Court to consider Defendants' claims of substantive issues for appeal, the Court nonetheless finds that Defendants' fail to demonstrate the requisite "strong showing" of a likelihood of success on appeal.

### 5. *Due Process Concerns*

Defendants also claim that the combination of the sanction imposed against Defendants as a result of their discovery misconduct (to wit, striking their public use defense), in combination with an injunction that is enforceable against nonparties, *i.e.,* against "those who might have purchased the [infringing] product abroad," raises due process concerns. *Defendants' Opposition* at 8. Such concerns are misplaced, however, and do not cut against the issuance of an injunction.

First, it is of little consequence that it was Defendants' discovery misconduct that changed the outcome of this litigation. As discussed, the Court finds a clear showing of infringement and patent validity. That the Court's earlier ruling removed the need for a new trial on public use should not be held against Jeneric/Pentron, particularly in light of the Court's conclusions that the new evidence would probably have changed the outcome of any new trial.

Second, any injunctive order would apply only to Defendants and those nonparties "in active concert or participation with them who receive actual notice of the order ...." FED. R. CIV. P. 65(d). Thus, Defendants' warning that any injunction

would "punish the innocent" is unfounded at this point.

### 6. *Whether the Balance of Hardships Favors an Injunction*

As discussed above, the Court finds that Jeneric/Pentron will suffer irreparable harm if an injunction is not issued at this time, that an adequate remedy at law concerning future infringement is not available, that the public interest favors the issuance of an injunction, that Defendants' claim of substantive issues for appeal is misplaced, and that Defendants' due process concerns are meritless.

While the Court acknowledges that the issuance of the permanent injunction carries with it significant consequences, such are the consequences that follow from infringing actions. *See Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n. 12 (Fed.Cir.1986) (noting that "one who elects to build a business on a product found to infringe" cannot object to an injunction). In conclusion, the Court finds that the equities of this case support the imposition of a permanent injunction.

### IV. *FORM AND SCOPE OF PERMANENT INJUNCTION*

The requirements for a valid injunction are found in Rule 65(d) of the Federal Rules of Civil Procedure, which provides:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual

notice of the order by personal service or otherwise.

FED. R. CIV. P. RULE 65(d). As the Supreme Court has noted, "[t]he Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974). Thus, any such order must "provide plaintiffs with the appropriate level of protection while still placing defendants on notice of the prohibited conduct." *See American Can Co. v. Mansukhani*, 742 F.2d 314, 333 (7th Cir.1984).

The Court has considered Jeneric/Pentron's Proposed Permanent Injunction ("Proposed Injunction"), which it attached to its *Motion for Permanent Injunction* [Doc. No. 207, Exhibit A]. Defendants raise objections to the form and scope of the Proposed Injunction.

First, Defendants contest the inclusion of LF–PFM, LF–1–PFM, CPC–LF, Sensation, Cerpress and Authentic in the Proposed Injunction. Defendants claim that the jury in this matter returned a verdict holding that only Sensation and Cerpress infringe; thus, the other products should not be included in an injunction.

As Defendants themselves acknowledge, the Federal Circuit permits injunctive decrees prohibiting those devices that have been adjudged to infringe and "colorable" variations thereof. *See KSM Fastening Systems v. H.A. Jones Co.*, 776 F.2d 1522, 1526 (Fed.Cir.1985). Defendants have attested to the fact that LF–PFM, LF–1–PFM and Sensation are the same product, and that CPC–LF and Cerpress are the same product. Thus, in light of the jury's verdict holding that Sensation and Cerpress were infringing products, it is appropriate to include LF–PFM, LF–1–

PFM and CPC–LF within the scope of "colorable variations" of the infringing products.

As to whether Authentic appropriately falls within the scope of a "colorable variation" of LF–1–PFM, the Court is unable to draw such a conclusion based on the present record. Jeneric/Pentron contends that, based on Chemicl AG's earlier response to Jeneric/Pentron's request for documents pertaining to Authentic, Authentic should be included within the scope of "colorable variations" of the infringing products.[1] Defendants, however, argue that Authentic was never their product and that they do not know what the German trademark-holding company of Authentic does with the product after it buys product (presumably, LF–1–PFM) from Chemicl AG. *See Transcript, Chambers Conference,* March 14, 2003 at 24, 26; *Defendants' Reply Memorandum in Support of its Motion for Entry of Judgment* at 11. There is nothing in the record upon which the Court might appropriately base a decision to include Authentic within the scope of the permanent injunction. Thus, based on the inadequate record before the Court concerning the composition of Authentic, the Court finds it inappropriate to include Authentic within the scope of "colorable variations" of the infringing products.

■ Second, Defendants claim that the second paragraph of the Proposed Injunction is too broad in that it "does not specifically identify the scope of the mentioned claims," merely "contains the overly-broad prohibition against 'infringement' (*i.e.,* 'product which infringes'), and, further, violates the mandate in Rule 65(d) that the terms of an injunction must not refer to

'the complaint or other document' of [sic] the acts sought to be restrained." *Defendants' Opposition* at 10–11.

The Court finds that the use of the word "infringement" is not overly broad in light of Federal Circuit precedent and the detailed record that exists in this case. *See Signtech USA. Ltd. v. Vutek, Inc.,* 174 F.3d 1352, 1359 (Fed.Cir.1999) (finding that order establishing "permanent injunction against [Signtech] for any further infringement" of patent-in-suit satisfies Rule 65(d) requirements in light of "detailed record on which this injunction was entered").

■ Next, Defendants object to the third paragraph of the Proposed Injunction, which seeks to prohibit three forms of infringement: direct, contributory, and actively inducing. Defendants contend that because Jeneric/Pentron "tried this case on the theory that Defendants directly infringed," Jeneric/Pentron thereby "waived any theory that they contributorily infringed or actively induced infringement." *Defendants' Opposition* at 11.

As Jeneric/Pentron points out, "35 U.S.C. § 271 expressly prohibits patent infringement whether it be direct infringement, inducement to infringe, and/or contributory infringement." *Plaintiff's Reply* at 12. The Court knows of no reason why it should distinguish among the different forms of infringement covered by the statute. The focus of the injunction is to protect against future infringement, no matter how it is manifested. Absent authority—Defendants' cite none—to distinguish among the three acts of infringement based simply on the plaintiff's trial

---

1. In their Response to Request No. 4 of Jeneric/Pentron's First Set of Requests for Production of Documents to Defendant Chemical AG, Defendants indicate that documents in connection with the trade name "Authentic"

"have already been produced in this litigation with respect to LF–1–PFM." Responses to Jeneric's First Set of Requests for Production of Documents to Defendant Chemical AG, April 12, 2002.

theory, the Court rejects Defendants' objection.

■ Next, Defendants argue that the Proposed Injunction fails to adequately address Chemicl AG's activity in Europe. Specifically, Defendants voice concern that the proposed injunction leaves them vulnerable to allegations of contempt should Chemicl AG validly and properly sell LF–PFM or LF–1–PFM to various customers in Europe, who then subsequently import such products into the United States. *See Defendants' Opposition* at 12. Defendants suggest that, perhaps, "it may well be that if Chemicl AG sells product in Europe, that the sale of such product should bear appropriate notations, such as 'not to be imported into the United States' or the like." *Id.* at 13 (citing *Spindelfabrik Suessen–Schurr v. Schubert & Salzer*, 903 F.2d 1568, 1578 (Fed.Cir.1990)).

The Court finds that including such language in the injunction is unwarranted at this time. The trial court in *Spindelfabrik* included detailed language similar to that suggested by Defendants in response to repeated violations of the original injunction. No such circumstance exists here. *See Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1356 (Fed.Cir.1998) (holding that "broad injunctions [similar to that used in *Spindelfabrik*] should be used only in exceptional cases," such as when "[t]he district court considered the broad injunction to be necessary in light of the repeated past violations of the original injunction"). Here, the Proposed Injunction expressly commands that:

> Defendants and any other persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, shall be permanently enjoined from importing into the United States, or making, using,

selling or offering to sell within the United States, [infringing products].

*Proposed Injunction* ¶ 2. *See also id.* ¶ 1. The Court finds that this language adequately addresses Chemicl AG's activity in Europe. *See generally Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 526, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972) ("[I]f Deepsouth's conduct were intended to lead to use of patented deveiners inside the United States its production ... activity would be ... an induced or contributory infringement.").

Lastly, Defendants stress their right to "'design around' the claims of a patent," *i.e.*, that "Chemicl AG may possibly wish to experiment with use of fluxes other than barium oxide, baron oxide and sodium oxide." *Defendants' Opposition* at 13. Accordingly, Defendants seek a "bright-line test of the scope of the injunctive decree so that Chemicl may ensure its actions fully comply." *Id.* at 14.

As held by the Federal Circuit,

> [a]n enjoined party is entitled to design around the claims of a patent without the threat of contempt proceedings with respect to every modified device although he bears the risk that the enjoining court may find changes to be too insubstantial to avoid contempt.

*KSM Fastening*, 776 F.2d at 1526. The Court believes that the language of the Proposed Injunction, along with the detailed record on which any injunction will be entered, provides sufficient notice as to the scope of what activity is being enjoined.

## CONCLUSION

Having determined that a permanent injunction is warranted in this case, this Court hereby GRANTS Jeneric/Pentron's

motion for a permanent injunction [Doc. No. 207].

SO ORDERED.