194 F.3d 1250 (Fed. Cir. 1999)
 MICRO CHEMICAL, INC., Plaintiff/Counterclaim Defendant-Appellant, and WILLIAM PRATT, Counterclaim Defendant,
v.
GREAT PLAINS CHEMICAL CO., INC., LEXTRON, INC. and ROBERT C. HUMMEL, Defendants/Counterclaimants- Appellees.
 98-1393
 United States Court of Appeals for the Federal Circuit
 DECIDED: October 6, 1999
 
 Appealed from: United States District Court for the District of Colorado Senior Judge Zita L. Weinshienk[Copyrighted Material Omitted][Copyrighted Material Omitted]
 Gregory A. Castanias, Jones, Day, Reavis & Pogue, of Washington, DC, argued for plaintiff/counterclaim defendant-appellant, Micro Chemical, Inc. and counterclaim defendant, William Pratt. With him on the brief was Thomas M. Fisher. Of counsel on the brief was John Mozola, Mullin, Hoard & Brown, L.L.P., of Amarillo, Texas. Of counsel was Richard P. Holme, Davis, Graham, of Denver, Colorado.
 Dennis J. Mondolino, Hopgood, Calimafde, Kalil & Judlowe, LLP, of New York, New York, argued for defendants/counterclaimants-appellees. With him on the brief was Michael F. Hurley.
 Before PLAGER, RADER, and BRYSON, Circuit Judges.
 RADER, Circuit Judge.
 
 
 1
 Following a bench trial, the United States District Court for the District of Colorado determined that Great Plains Chemical Company, Inc., now Lextron, Inc. (Lextron), did not infringe Micro Chemical, Inc.'s U.S. Patent No. 4,733,971 (the '971 patent). The '971 patent relates to devices and methods for dispensing the proper amount of additives into livestock feed rations. Because, under a correct claim construction, the district court's finding that the accused device does not infringe claims 63, 74, 93, and 94 is clearly erroneous, this court reverses the district court's judgment of non-infringement. However, because the district court's finding of non-infringement of claim 91 is not clearly erroneous, this court affirms that judgment of non-infringement. This court also affirms the district court's summary judgment that released Mr. Robert C. Hummel, Lextron's president, from personal liability for infringement.
 
 I.
 
 2
 The '971 patent discloses machines and methods for weighing, dispensing, and delivering microingredients into livestock feed. Microingredients include any type of feed additive such as vitamins and medicine. The machines and methods measure the microingredients, either by weight or by volume, and then add them to a liquid. The machines and methods then mix the microingredients with the liquid to form a slurry before applying them to the feed.
 
 
 3
 In the '971 patent's preferred embodiment, suspension frames suspend the ends of a compartmented subframe. Col. 6, ll. 10-16. A weigh tower is located at each end of the weigh hopper. A load cell in each weigh tower measures the cumulative weight of the hopper and its contents. Col. 10, ll. 17-24. These load cells send the weight measurements to a central processing unit (CPU). Col. 10, ll. 20-22. In operation, a first microingredient storage bin dispenses a microingredient into one of the hopper's compartments until the CPU registers the proper weight. Col. 11, l. 1 to col. 14, l. 17. Then each storage bin, in turn, pours its microingredient into a separate hopper compartment. The CPU uses the cumulative weight measurement from the load cells to regulate the amount of each microingredient added. The process continues until each separate chamber of the hopper contains the correct amount of a different microingredient. This process - use of a compartmented hopper to weigh multiple microingredients before dispensing them into the liquid - is known as the "cumulative weigh" method.
 
 
 4
 When the hopper has the proper contents, the preferred method inverts the hopper and vibrates it to discharge the microingredients into a mixing vessel containing a liquid. Col. 8, l. 37 to col. 9, l. 12. Variable speed mixers then mix the microingredients with the liquid to form a liquid slurry. Col. 9, ll. 13-32. Finally, a plumbing system delivers the slurry from the mixing vessel to the feed. Col. 9, l. 61 to col. 10, l. 2.
 
 
 5
 The '971 patent specification describes alternative embodiments of the invention. One alternative embodiment dispenses each microingredient into the liquid carrier directly from the storage bins. Col. 19, l. 60 to col. 20, l. 15. In this embodiment, a load cell supporting each storage bin measures the bin weight. By measuring the decreasing bin weight, the CPU again ensures that a proper amount of each ingredient enters the slurry. This method, known as the "loss of weight" method, eliminates the need for a hopper altogether. Col. 19, ll. 60-61. A variation of this embodiment measures the amount of microingredient dispensed from the storage bin using a weight per unit time formula, or volumetric metering mode, rather than a load cell. Col. 20, ll. 16-20. Yet another embodiment uses volumetric measurement of liquid microingredients in combination with weight measurement of solid microingredients. Col. 20, ll. 54-60.
 
 
 6
 Lextron manufactures and sells microingredient feed additive systems. Initially, Lextron made and sold "type one" machines which used a cumulative weigh method similar to the '971 patent's preferred embodiment. After issuance of the '971 patent, however, Lextron stopped producing and selling the type one machines. Instead, it adapted its machines to a "type two" configuration. The type two machines used a method of weighing and dumping each additive one at a time into the liquid. This method, known as the "weigh dump" method was featured in a prior art system, the Brewster system. In this respect, Lextron's type two machine was similar to the Brewster system. The type two machines are the only machines at issue on this appeal. The parties have settled their dispute with respect to the type one machines.
 
 
 7
 The '971 patent issued on March 29, 1988. Two days later, Micro Chemical sued Lextron for direct infringement and its President, Robert C. Hummel, for inducement to infringe. In a 1995 decision, the district court held the claims of the '971 patent invalid under 35 U.S.C. §§ 102(b) and 103 (1994). See Micro Chem., Inc. v. Great Plains Chem. Co., 900 F. Supp. 1386 (D. Colo. 1995). The district court also found the patent's "isolation" claims not infringed. See id. On appeal from that decision, this court reversed the findings of invalidity but upheld the finding of non-infringement of the isolation claims. See Micro Chem., Inc. v. Great Plains Chem. Co., 103 F.3d 1538, 1540, 41 USPQ 2d 1238, 1240 (Fed. Cir. 1997). This court then remanded the case to the district court for a determination of infringement with respect to the remaining asserted claims. See id.
 
 
 8
 Five claims remain at issue, apparatus claims 74 and 91 and method claims 63, 93, and 94. Apparatus claim 74 recites:
 
 
 9
 An apparatus for measuring, dispensing, and delivering microingredient feed additive concentrates in small but accurate amounts in a liquid carrier slurry into a livestock or poultry feed ration shortly before the delivery of said feed ration to the animals for consumption, said apparatus comprising:
 
 
 10
 multiple storage means for storing separately a plurality of different microingredient feed additive concentrates;
 
 
 11
 multiple dispensing means for dispensing additives separately from said multiple storage means;
 
 
 12
 weighing means for determining the weights of selected additives dispensed by said dispensing means from said storage means;
 
 
 13
 a mixing vessel for receiving a liquid carrier and the dispensed and weighed additive concentrates;
 
 
 14
 flow-inducing means for inducing a flow of liquid carrier within said mixing vessel and thereby mixing said carrier with the dispensed additive concentrates to form a slurry;
 
 
 15
 delivery means for delivering said slurry from said mixing vessel to a remote slurry-receiving station for mixing with the feed ration; and
 
 
 16
 control means operable to:
 
 
 17
 (a) control separately the operation of said plural dispensing means in response to weight determinations of said weighing means to control the weight of additive concentrates dispensed;
 
 
 18
 (b) operate said flow-inducing means to cause a positive intermixing of the dispensed additive concentrates and the liquid carrier within said mixing vessel before discharge of liquid carrier from said vessel;
 
 
 19
 (c) operate said delivery means to deliver slurry to said receiving station after the slurry is formed in said mixing vessel by said flow-inducing means.
 
 
 20
 (emphasis added). The only disputed limitation of this claim is the "weighing means" element. Apparatus claim 91 contains a similar disputed element: "weighing means on said support frame means for weighing predetermined weights of said different additive concentrates dispensed into said multiple hopper container means by said dispensing means." (emphasis added).
 
 
 21
 The district court identified these two disputed claim elements as means-plus-function elements under 35 U.S.C. § 112, ¶ 6 (1994). Based on its examination of the preferred embodiment described in the specification, the district court concluded that the corresponding structure included weigh towers - containing suspension-type load cells, suspension arms, and dampening rods - and a partitioned, inverting hopper. Thus, the district court interpreted these claims to require each of these specific structural elements or their equivalents.
 
 
 22
 The district court also relied on statements in the background section of the patent when interpreting these claims. In that section, the applicant discussed the specific disadvantages of the prior art Brewster system:
 
 
 23
 It is believed that such system weighed and then dispensed each additive separately and sequentially. It is believed that such system was unsuccessful because it was too slow and too inaccurate for handling additive concentrates in a feedlot environment.
 
 
 24
 Col. 2, ll. 12-18. The district court read this language to disavow any coverage of the weigh dump method. The district court therefore limited the "weighing means" elements of "claims 74 and 91 . . . to the above-described structures, and their equivalents thereof, which sequentially and cumulatively weigh the microingredients." See Micro Chem., Inc. v. Great Plains Chem. Co., No. 88-Z-499, at 3 (D. Colo. Filed Dec. 8, 1997).
 
 
 25
 With this interpretation of the "weighing means" element, the district court concluded that Lextron did not literally infringe either claim 74 or claim 91. The district court determined that there was neither identity of function nor equivalent structure in the accused device. Citing functional differences between Lextron's weigh dump design and the cumulative weigh design of the '971 patent's preferred embodiment, the district court concluded that the "function achieved by Lextron's machine is not identical to the . . . function recited in the claims and specification[]." See Id., at 4.
 
 
 26
 In a structural comparison of the accused device with the preferred embodiment, the district court determined that the accused device lacked weigh towers or their equivalents. The district court further decided that the compression-type load cells of the accused device are not identical or equivalent to the suspension-type load cells of the preferred embodiment. The district court also noted differences between the cumulative weigh hopper of the preferred embodiment and Lextron's hopper. Specifically, the district court identified the lack of partitions in the weigh hopper of the accused device and its different structure to dump the microingredients. The district court found that "Lextron's weigh hopper does not feature a sealed bottom like [Micro Chemical's], where the entire hopper is rotated and inverted to discharge the microingredients. Rather, Lextron's weigh hopper features a trap door in the bottom of the hopper, which opens and closes during the dispensing phase." See Id. Based on these comparisons, the district court concluded that "Lextron's weigh hopper is structurally and functionally different than the weigh hopper disclosed in [the '971 patent]. Lextron's machine does not weigh the microingredients cumulatively." See Id.
 
 
 27
 Focusing on claim 91, the district court addressed "additional limitation[s] which defeat[] a finding of infringement." Specifically, the district court found the "hopper means" and the "hopper discharge means" not present in the accused device. Applying § 112, ¶ 6, the district court found the "hopper means" element of claim 91 limited to the partitioned cumulative weigh hopper of the preferred embodiment. Again applying § 112, ¶ 6, the district court found the "hopper discharge means" limited to the inverting hopper of the preferred embodiment. Because the accused device uses a non-partitioned hopper with a trap door in the hopper bottom, the district court concluded that the accused device did not have either the "hopper means" or the "hopper discharge means" of claim 91. See Id., at 5.
 
 
 28
 The district court also found no infringement with respect to asserted method claims 63, 93, and 94. The district court construed these claims as covering only the cumulative weigh method of the preferred embodiment. Claim 63 is illustrative of the method claims:
 
 
 29
 A method of dispensing and delivering microingredient feed additives into a livestock feed ration shortly before delivering the feed ration to the livestock for consumption, comprising the steps:
 
 
 30
 storing separately multiple said additives in concentrate form;
 
 
 31
 dispensing predetermined weights of selected said additive concentrates into a liquid carrier with no substantial intermixing of the additive concentrates before they enter the liquid carrier;
 
 
 32
 intermixing the additive concentrates in the liquid carrier to dilute, disperse, and suspend them and form a liquid carrier-additive slurry;
 
 
 33
 directing the slurry to a receiving station while maintaining the suspension and dispersion of the additives until delivered into a feed ration; and
 
 
 34
 determining the predetermined weights of selected additives by the step of measuring the predetermined weights while isolating the measuring means from influences that would affect the measuring function so that accurate weight determinations are obtained.
 
 
 35
 (emphasis added). The only dispute regarding claims 63 and 93 involves this same "dispensing" step. Claim 94, however, contains a different disputed limitation: "weighing predetermined amounts of selected said additives, with no substantial intermixing of the selected additives during the weighing process." (emphasis added).
 
 
 36
 The district court rejected Lextron's contention that these claim terms required step-plus-function treatment under § 112, ¶ 6. Despite finding § 112, ¶ 6 inapplicable, however, the district court nonetheless limited their scope to cover only the cumulative weigh method. In so limiting the claims, the district court relied heavily on the language in the background section of the specification that discredited the Brewster prior art. The district court also relied on statements in the prosecution history. In a subsequent Order the district court disavowed a substantial portion of its prosecution history reasoning because it had erroneously relied on language relating only to unasserted claim 92, while nevertheless reaffirming its earlier construction of the claims. The district court believed the record contained other "sufficient, compelling evidence . . . to support [its] construction of the relevant claims." See Micro Chem., Inc. v. Great Plains Chem. Co., No. 88-Z-499, at 2 (D. Colo. filed April 29, 1998). This other prosecution history evidence consisted solely of statements made in the Third Supplemental Information Disclosure Statement (July 21, 1987) which discussed the Brewster device.
 
 
 37
 Regarding the personal liability of Lextron's president, the district court granted summary judgment in favor of Mr. Hummel because he sought advice of counsel and took actions to avoid infringement. The district court therefore concluded that Mr. "Hummel lacked the requisite intent and knowledge to be liable for inducement to infringe under [35 U.S.C. § 271(b) (1994)]." See Micro Chem., Inc. v. Great Plains Chem. Co., No. 88-Z-499, at 8 (D. Colo. filed Nov. 19, 1997).
 
 II.
 
 38
 This court reviews a district court's claim construction without deference to the trial court's judgment. See Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454-56, 46 USPQ2d 1169, 1172-75 (Fed. Cir. 1998) (en banc); Markman v. Westview Instruments, Inc., 52 F.3d 967, 979-81, 34 USPQ2d 1321, 1329-31 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996). This court reviews the district court's summary judgment without deference. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). If material facts are in dispute, summary judgment is inappropriate. See Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, this court resolves all factual inferences and doubts in favor of the non-moving party. See Anderson, 477 U.S. at 255; Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc., 145 F.3d 1303, 1307, 46 USPQ2d 1752, 1755 (Fed. Cir. 1998).
 
 Apparatus Claims 74 and 91
 
 39
 A major dispute in this appeal centers on the district court's interpretation of the claims. Each of the apparatus claims at issue contains one or more limitations which arguably invoke application of 35 U.S.C. § 112, ¶ 6. This court has established a framework for determining whether the elements of a claim invoke means-plus-function treatment. See Al-Site Corp. v. VSI Int'l, Inc., 174 F.3d 1314, 1318, 50 USPQ2d 1161, 1166 (Fed. Cir. 1999). If the word "means" appears in a claim element in association with a function, this court presumes that § 112, ¶ 6 applies. See id. This presumption collapses, however, if the claim itself recites sufficient structure, material, or acts to perform the claimed function. See id. Without the term "means," a claim element is presumed to fall outside means-plus-function strictures. See id.; Personalized Media Communications, LLC v. International Trade Comm'n, 161 F.3d 696, 703-05, 48 USPQ2d 1880, 1887 (Fed. Cir. 1998). Once again, however, that presumption can collapse when an element lacking the term "means" nonetheless relies on functional terms rather than structure or material to describe performance of the claimed function. See Al-Site, 174 F.3d at 1318.
 
 
 40
 This court notes that the disputed "weighing means" claim elements in this case use means-plus-function terminology. The term "means" appears in both elements in connection with a function, invoking the presumption that § 112, ¶ 6 applies. Furthermore, this presumption remains unrebutted because neither claim recites structure sufficient to perform the recited function. Thus, these claim elements invoke § 112, ¶ 6 treatment.
 
 
 41
 Application of § 112, ¶ 6 requires identification of the structure in the specification which performs the recited function. See Rodime PLC v. Seagate Tech., Inc., 174 F.3d 1294, 1302, 50 USPQ2d 1429, 1435 (Fed. Cir. 1999). Therefore, § 112, ¶ 6 requires both identification of the claimed function and identification of the structure in the written description necessary to perform that function. The statute does not permit limitation of a means-plus-function claim by adopting a function different from that explicitly recited in the claim. Nor does the statute permit incorporation of structure from the written description beyond that necessary to perform the claimed function. See id. In this case, the district court erred both by incorporating structure beyond that necessary to perform the claimed functions and by incorporating unrecited functional limitations into the claims.
 
 
 42
 This court turns first to identification of the function of these claim elements. Each apparatus claim recites a "weighing means . . . for" performing a specified function. In claim 74, the properly identified function of this means-plus-function element, signaled by the preposition "for," is "determining the weights of selected additives." Similarly, in claim 91, the recited function is "weighing predetermined weights of said different additive concentrates." The parties agree that the "weighing means" elements in both claims have the same meaning.
 
 
 43
 The district court erroneously restricted the functions of these means-plus-function elements. Although the district court initially identified "weighing" as the recited function, it then proceeded to limit that function to "sequential and cumulative weighing." By narrowly interpreting the claimed function, the district court concluded that the function achieved by Lextron's machine is not identical to the function recited in the claims and specification[]." See Micro Chem., Inc. v. Great Plains Chem. Co., No. 88-Z-499, at 4 (D. Colo.filed Dec. 8, 1997).
 
 
 44
 The claim, however, does not limit the function of the "weighing means" to cumulative weighing. Rather, the claim language identifies the function of the "weighing means" in each claim as simply weighing the microingredients. An error in identification of the function can improperly alter the identification of structure in the specification corresponding to that function.
 
 
 45
 After identifying the function of the means-plus-function element, this court looks to the written description to identify the structure corresponding to that function. Identification of corresponding structure may embrace more than the preferred embodiment. A means-plus-function claim encompasses all structure in the specification corresponding to that element and equivalent structures. Because it had adopted an unnecessarily narrow function for the "weighing means," the district court improperly restricted its search for corresponding structure in the specification. Thus, the district court erroneously overlooked alternative embodiments of the invention. The district court restricted the "weighing means" to the specific cumulative weigh structure of the preferred embodiment. In fact, the specification describes other structure corresponding to the claimed function.
 
 
 46
 The '971 patent's summary of the invention explains that the "weigh means, for example, may comprise a weight scale means supporting the weigh hopper or supporting the storage means." Col. 3, ll. 26-28. The written description therefore provides that a weight scale supporting the weigh hopper or supporting the storage bin corresponds to the weigh means. This more general structure performs the recited functions of "determining the weights" and "weighing predetermined weights" of microingredients.
 
 
 47
 When multiple embodiments in the specification correspond to the claimed function, proper application of § 112, ¶ 6 generally reads the claim element to embrace each of those embodiments. See Serrano v. Telular Corp., 111 F.3d 1578, 1583, 42 USPQ2d 1538, 1542 (Fed. Cir. 1997). The '971 patent specification discloses in detail several alternative embodiments of the invention, each having a different type of weighing means. In addition, the specification suggests "a weight scale means supporting the weigh hopper." Col. 3, ll. 26-28. One alternative embodiment discloses a loss-of-weight type weighing means, in which the weighing means is a load cell from which each storage bin is suspended. Col. 19, ll. 60-66. Because alternative structures corresponding to the claimed function were described, the district court incorrectly limited "weighing means" to the specific structures of the preferred embodiment.
 
 
 48
 Accordingly, "weighing means" literally includes a weight scale (i.e., a load cell) from which the weigh hopper or storage bin is suspended, or a weight scale means supporting the weigh hopper or storage means, or an equivalent structure. The accused device uses a compression-type load cell weight scale supporting its weigh hopper. Under a correct claim construction, therefore, "weighing means" encompasses the accused device. Because this was the only disputed limitation in claim 74, Lextron's type two machines literally infringe.
 
 
 49
 With respect to claim 91, however, the district court correctly concluded that additional limitations preclude a finding of infringement. The district court erroneously incorporated the separate "hopper means" and "hopper discharge means" limitations into its restrictive interpretation of "weighing means." Although the proper interpretation of "weighing means" does not encompass these additional limitations, this court nonetheless agrees that these limitations are present in claim 91 and preclude a finding of literal infringement of that claim.
 
 
 50
 Initially, this court notes that the "hopper means" element does not fall within the ambit of § 112, ¶ 6. The claim language does not associate this element with any function. Moreover, the claim recites extensive structure for the "hopper means." Notwithstanding the incorrect application of § 112, ¶ 6, the district court correctly read the "hopper means" as limited to a compartmented hopper. The express language of the claim carries that meaning. The language "hopper means, including multiple hopper container means" describes a compartmented hopper. Because the accused device does not employ a compartmented hopper, it does not literally infringe claim 91.
 
 Method Claims 63, 93, and 94
 
 51
 The district court determined that the method claims at issue were not step-plus-function claims under § 112, ¶ 6. That issue is presented to this court as an alternative grounds for affirmance. However, because this court concludes that the method claims would be infringed whether or not interpreted under § 112, ¶ 6, this court does not address whether the district court was correct in finding the method claims not in step-plus-function form.
 
 
 52
 In this case, if the disputed method claim elements fall within § 112, ¶ 6, under that statute, this court looks to the specification for acts corresponding to the step-plus-function element which are necessary to perform the recited function. In this case, these corresponding acts include all acts described in the specification for dispensing microingredient quantities measured by weight. These acts include the cumulative weigh method of the preferred embodiment and the loss of weight method of the alternative embodiment, as well as the weigh dump method of the prior art. See Intel Corp. v. United States Int'l Trade Comm'n, 946 F.2d 821, 842, 20 USPQ2d 1161, 1179 (Fed. Cir. 1991) ("It is not necessary to consider the prior art in applying section 112, paragraph 6. Even if the prior art discloses the same or an equivalent structure, the claim will not be limited in scope thereby. . . . Claim limitations may, and often do, read on the prior art, particularly in combination [claims]."). In sum, the patent specification describes each of these methods as a way to accomplish the desired function of dispensing predetermined weights of microingredients without substantial intermixing prior to entry into the liquid.
 
 
 53
 Although the applicant noted in the patent's background section that a particular piece of prior art which practiced the weigh dump method was less effective than the preferred embodiment in accomplishing the claimed function, the weigh dump method itself was nowhere disavowed as being incapable of performing that function. To the contrary, the specification specifically included this prior art as a component of the combination claim. If these claims are in step-plus-function form, they therefore encompass the weigh dump method used by the accused device and these claims are literally infringed.
 
 
 54
 If, however, the claims are not in step-plus-function form, they are also literally infringed. Claim treatment outside of the requirements of § 112, ¶ 6 generally gives the claims a broader scope. If the meaning of these claim elements is not limited to the specific acts described in the specification and their equivalents through operation of § 112, ¶ 6, then they will be given their ordinarily understood meanings in the art. The disputed limitations are "dispensing predetermined weights of selected said additive concentrates into a liquid carrier with no substantial intermixing of the additive concentrates before they enter the liquid carrier" and "weighing predetermined amounts of selected said additives, with no substantial intermixing of the selected additives during the weighing process." The weigh dump method satisfies the ordinarily understood meanings of these claim limitations. The weigh dump method weighs predetermined amounts of the microingredients and dispenses them into the liquid carrier with no substantial intermixing of microingredients during the weighing process. Lextron does not dispute this. Rather, Lextron's efforts to avoid infringement rested primarily on incorporation of a cumulative weighing requirement into the method claims. The claim language, however, does not require such an incorporation. The district court erred by limiting the disputed method claims to the cumulative weigh method of the preferred embodiment. The dispensing and weighing elements of the method claims encompass the accused method. Lextron's accused processes literally infringe claims 63, 93, and 94.
 
 Disavowal
 
 55
 In restricting the scope of the apparatus and method claims to cover only a cumulative weigh system, the district court read the patentee's statements about the Brewster prior art as a clear disavowal of the weigh dump method. To the contrary, although the applicant noted certain inefficiencies in the Brewster system, the patent never clearly disavows the weigh dump method as being incapable of performing the claimed functions. The statements relied on by the district court in both the background section and the prosecution history were directed to a particular prior art device, the Brewster machine, not to the weigh dump method in general.
 
 
 56
 The background section notes that the Brewster machine "weighed and then dispensed each additive separately and sequentially." Col. 2, ll. 14-15. The background section further explains that this machine "was unsuccessful because it was too slow and too inaccurate for handling additive concentrates in a feedlot environment." Col. 2, ll. 16-18. Nothing, however, directly attributes the failures of the Brewster machine to anything other than its particular design. The patentee did not at any time assert that the weigh dump method itself is the reason for the inaccuracies or slowness of the Brewster system.
 
 
 57
 The prosecution history also does not disavow the weigh dump method. The prosecution history merely described the Brewster system to facilitate a comparison by the patent examiner. The description of the Brewster machine pointed out numerous features which were distinguishable from the preferred embodiment of the invention. However, only one of these features appears as an express limitation of each of the disputed claims, namely, intermixing the microingredients in the liquid before discharging them into the feed ration. The Brewster system did not intermix the microingredients in the liquid carrier - presumably because such intermixing would interfere with the weighing operation.
 
 
 58
 This court notes that the prior art did not "perform[] the claimed method" as the district court suggests. Rather the "claimed method" is the unique combination of steps found in method claims 63, 93, and 94 - not any single step in isolation. The prosecution history suggests that the applicant avoided the prior art by including an intermixing limitation in the claims. The prosecution history does not suggest that the applicant disavowed the weigh dump method. The district court erred by interpreting these statements in the background section of the patent and the prosecution history as a disavowal of the weigh dump method.
 
 Mr. Hummel's Personal Liability
 
 59
 Officers of an allegedly infringing corporation can be held personally liable for actively inducing infringement under 35 U.S.C. § 271(b) only if they "knew or should have known [their] actions would induce actual infringements." Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544, 553, 16 USPQ2d 1587, 1593 (Fed. Cir. 1990). Pre-issuance activities alone cannot establish inducement to infringe. See National Presto Indus., Inc. v. West Bend Co., 76 F.3d 1185, 1196, 37 USPQ2d 1685, 1693 (Fed. Cir. 1996). Micro Chemical brought this suit two days after the patent issued, at which time Mr. Hummel took reasonable steps to avoid infringement. Among other things, Mr. Hummel sought and relied on the advice of counsel in redesigning the accused machines. The undisputed facts do not establish the knowledge necessary to find inducement to infringe. The district court appropriately granted summary judgment finding Mr. Hummel not personally liable for inducing Lextron's infringement.
 
 III.
 
 60
 In conclusion, this court reverses the district court's entry of judgment of non-infringement with respect to claims 63, 74, 93, and 94, but affirms with respect to claim 91. This court affirms the district court's grant of summary judgment finding Mr. Hummel not personally liable for inducement to infringe. The case is remanded to the district court for an assessment of damages.
 
 COSTS
 
 61
 Each party shall bear its own costs.
 
 
 62
 AFFIRMED-IN-PART, REVERSED-IN-PART, and REMANDED.