**GLOBETROTTER SOFTWARE, INC., Plaintiff–Appellant,**

v.

**ELAN COMPUTER GROUP, INC., and Ken Greer, Defendants/Third Party Plaintiffs–Appellees,**

and

**Rainbow Technologies, Inc., and Rainbow Technologies North America, Inc., Defendants–Appellees,**

v.

**Matthew CHRISTIANO, Third Party Defendant.**

No. 00–1110.

United States Court of Appeals, Federal Circuit.

Jan. 18, 2001.

**1364**

Bruce A. Wessel, Irell & Manella LLP, of Los Angeles, CA, argued for plaintiff-appellant.

John I. Alioto, Alioto & Alioto, of San Francisco, CA, argued for defendants/third party plaintiffs-appellees and defendants-appellees. With him on the brief was Linda M. Alioto.

Before BRYSON, Circuit Judge, PLAGER, Senior Circuit Judge,* DYK, Circuit Judge.

DYK, Circuit Judge.

Globetrotter Software, Inc. ("Globetrotter" or "plaintiff") appeals from the decision of the United States District Court for the Northern District of California denying Globetrotter's motion for preliminary injunction. *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, Docket No. C–98–20419 (N.D.Cal. Oct. 26, 1999). Globetrotter alleges, *inter alia*, that the district court improperly construed the scope of claim 55 of U.S. Patent No. 5,390,297 (the " '297 patent"). Because the district court properly construed the means-plus-function limitation of claim 55 with respect to the license file means limitation, we affirm the denial of Globetrotter's motion for preliminary injunction.

## BACKGROUND

The '297 patent is generally directed toward a license management system for controlling the number of concurrent copies of a program in use on a computer network. The number of concurrent cop-

---

* Judge Plager assumed senior status on No-    vember 30, 2000.

ies is limited to the number of licenses that has been purchased from the vendor of the system by the licensee, *i.e.*, the network owner. The network owner can therefore purchase a smaller quantity of licenses than the total number of computers that might run the program. Moreover, with the present invention the licensee can more easily monitor compliance with the terms of the license agreement. The licensor, *i.e.*, the vendor, also benefits because it no longer needs to rely on the integrity of the licensee to abstain from making copies beyond the number specified in a license agreement, and it no longer needs to rely on more complex copy prevention techniques. Rather, the vendor can simply include the software disclosed in the '297 patent in the program to be installed on the computer network.

The specification of the '297 patent discloses two embodiments. In the first, the "license transfer" embodiment, each license occupies an area of memory called a license file and each license file contains at most one license. In this embodiment, a computer user's request to use an application is granted only if the copy the user is trying to run corresponds to a license file which contains a license. If the license file does not contain a license, other license files are searched for an available license. When a license is found it is transferred to the license file where it is needed.

In the second, the "license pool" embodiment, several licenses may be contained in a single license file. In this embodiment, a user's request to use a copy of the application is granted only if the pool of licenses in the license file has not been exhausted by other similar requests. Each time a request is made to run an application, a counter is decremented to indicate that one less license is available.

Independent claim 55, the claim at issue in this appeal, reads as follows:

> 55. A license management system for limiting the number of copies of a given computer program that are permitted to run simultaneously on one or more nodes of a network in which said nodes are connected, said limiting being according to the number of licenses for said given computer program that are authorized for said network; said system comprising:
>
> *license file means* on at least one of said nodes *for storing at least one and up to a selectable authorized number of said licenses;*
>
> program storage means for storing a copy of said given computer program on at least one of said nodes without limiting the running of said given computer program to running on said one node; and
>
> license management means responsive to a request to run, said request being from one of said copies at a particular one of said nodes, for searching as many nodes as are necessary to locate one of said license file means that has a license that is available for authorizing a copy of said given computer program to run at said particular one of said nodes;
>
> said license management means being responsive to said search not locating any of said license file means having an available license *for returning to said requesting copy a message preventing said copy from running in response to said request.*

(emphasis added).

The specification of the '297 patent describes the structure necessary to perform the recited functions of the license management system of claim 55. The issue in this appeal is whether a unique identification ("UID") disclosed in the specification is necessary structure required to perform the function of "storing at least one and up to a selectable number of said licenses," as recited for the "license file means." Defendant Rainbow Technologies, Inc. ("Rainbow") acquired from defendant Elan Computer Group, Inc. ("Elan") license management software designated SentinelLM 5.0 by Rainbow. Rainbow also sells a second license management software designated SentinelLM 6.0. Elan and Rainbow allege that neither of these

products contains a UID, and thus could not infringe the '297 patent if a UID is a necessary part of the structure of claim 55.

Globetrotter, the patentee of the '297 patent, sued Elan and Rainbow (hereinafter referred to as "Elan" or "appellees"), asserting infringement of numerous claims, including independent claims 32 and 55, and dependent claims 56, 57, and 59.

In May 1999, Globetrotter filed motions for preliminary injunction and partial summary judgment of infringement, *inter alia,* with respect to claim 55. In response, in June 1999, Elan, *inter alia,* filed a cross-motion for partial summary judgment of non-infringement of claim 55. The district court then conducted a *Markman* hearing in order to interpret the claims of the '297 patent. On October 26, 1999, the district court issued two orders: (1) an order construing the terms of the '297 patent claims; and (2) an order, *inter alia,* denying Globetrotter's motions for preliminary injunction and partial summary judgment of infringement of claim 55, and granting Elan's motion for partial summary judgment of non-infringement of claim 55.

The first element of claim 55 recites a *"license file means* on at least one of said nodes *for storing* at least one and up to a selectable authorized number of said licenses." (emphasis added). In the October 26, 1999, *Markman* order, the district court ruled that:

> LICENSE FILE MEANS FOR STORING is an area of memory on the disk of a NODE, capable of storing at least one LICENSE, *and containing at least a UID.* Equivalents of the structure just described also constitute LICENSE FILE MEANS FOR STORING.

(emphasis added). The district court further cited the specification for the proposition that "the identification assigned to a given license file ... at a particular time is referred to as the UID." '297 patent, col. 6, ll. 39–42. In addition, the court noted that another program known as the " 'installation program' ... must be able to distinguish the UID of any license file

within its bailiwick from every other license file it may encounter." The district court therefore ruled that:

> A UID is data assigned to a LICENSE FILE which is different from the data assigned to any other LICENSE FILE then in existence with which the first mentioned LICENSE FILE otherwise may be confused.

The district court, in the summary judgment order which relied on the *Markman* order, determined that Globetrotter was not entitled to summary judgment because it had made no showing that the alleged infringing program includes a UID or equivalent based on the above definition. The district court then proceeded to analyze the fourth element of claim 55.

> The fourth element of claim 55 recites: said license management means being responsive to said search not locating any of said license file means having an available license *for returning to said requesting copy a message preventing said copy from running in response to said request.*

(emphasis added).

In the summary judgment order, the district court ruled that "[t]he fourth element of Claim 55 refers to the means-plus-function term 'license management means,' with the pertinent function being 'preventing [a] copy [of a program] from running.' " The district court denied Globetrotter's motion for summary judgment on the fourth element and granted Elan's motion for summary judgment of non-infringement on this element, determining that "[b]ecause the prevention function is not present [in the accused device], the second step in means-plus-function analysis (finding a corresponding structure) need not be reached."

Based in part on this analysis, the district court denied Globetrotter's motion for a preliminary injunction, stating that "[i]t is evident from the foregoing that GLOBEtrotter has not made a sufficient showing concerning its likelihood of prevailing

on the merits of this action to justify the issuance of a preliminary injunction...." Globetrotter then appealed to this court.

## DISCUSSION

### I. Jurisdiction and Standard of Review

While appellees correctly point out that we do not have jurisdiction to directly review the actions of the district court on the partial summary judgment motions, we have jurisdiction over Globetrotter's appeal of the district court's denial of its motion for preliminary injunction under 28 U.S.C. § 1292(c)(1). *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 704, 45 USPQ2d 1033, 1036 (Fed. Cir.1997). The denial of the preliminary injunction motion was based on the failure of Globetrotter to establish a probability of success on its infringement claim under the district court's construction of claim 55. Globetrotter predicates its appeal on the ground that the lack of probability of success was based on an erroneous claim construction.

■■■ "The grant or denial of a preliminary injunction pursuant to 35 U.S.C. § 283 is within the discretion of the district court." *Novo Nordisk of N. Am. v. Genentech, Inc.*, 77 F.3d 1364, 1367, 37 USPQ2d 1773, 1775 (Fed.Cir.1996). Accordingly, a district court's decision to grant or deny a preliminary injunction will be overturned only upon a showing that the court abused its discretion, committed an error of law, or seriously misjudged the evidence. *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1449, 7 USPQ2d 1191, 1194 (Fed.Cir.1988); *Bell & Howell*, 132 F.3d at 704, 45 USPQ2d at 1036. In particular, the denial of a preliminary injunction may be reversed if the district court "exercised its discretion based upon an error of law." *Novo Nordisk*, 77 F.3d at 1367, 37 USPQ2d at 1775. When a preliminary injunction is denied because of an error of law, as is alleged to have occurred here, the legal issue is reviewed *de novo*. Claim construction, of course, is a matter of law, and this court reviews a district court's claim construction *de novo*. *Cybor Corp.*

*v. FAS Techs., Inc.*, 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174 (Fed.Cir.1998) (*en banc*).

### II. Claim Construction

■■■ The parties do not dispute that the "license file means ... for storing" recited in claim 55 is a means-plus-function limitation invoking 35 U.S.C. § 112, paragraph 6. We agree. Section 112, paragraph 6 states that a means-plus-function claim "shall be construed to cover the corresponding structure, materials, or acts described in the specification and equivalents thereof." The determination of the corresponding structure of a means-plus-function claim is a determination of the meaning of the "means" term, and is a matter of claim construction. *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1308, 46 USPQ2d 1752, 1756 (Fed.Cir.1998).

■■■ Globetrotter urges that the district court's construction of the "license file means" of claim 55 to include a UID was improper. Globetrotter argues that the district court improperly read the "UID" limitation into the "license file means ... for storing" in violation of the holding of *Micro Chemical, Inc. v. Great Plains Chemical Co.*, 194 F.3d 1250, 52 USPQ2d 1258 (Fed.Cir.1999). *Micro Chemical* states that section 112, paragraph 6 "does not permit limitation of a means-plus-function claim by adopting a function different from that explicitly recited in the claim" and that section 112, paragraph 6 requires "identification of the structure in the written description necessary to perform that function," *i.e.,* the function described in the claim. *Id.* at 1258, 194 F.3d 1250, 52 USPQ2d at 1263. Globetrotter urges that the "license file means" only recites the function of storing a license, and that "a UID is not necessary to perform the function of storing a license." In support of this, Globetrotter argues that "storing licenses" and "assigning a UID" are separate functions performed by different means having different structures. Globetrotter asserts that UID structure is nec-

essary for the assigning means but not for the storing means. Moreover, Globetrotter alleges that the district court's analysis focused entirely on the license transfer embodiment and did not consider the license pool embodiment.

We disagree with Globetrotter's contentions. The first step is a determination of the function of the means-plus-function limitation. *Micro Chemical,* 194 F.3d at 1258, 52 USPQ2d at 1263. The district court properly interpreted the function to be "storing at least one license."

After identifying the function of the means-plus-function limitation, the next step is to determine the corresponding structure described in the specification and equivalents thereof. *Id.* The district court found that the "corresponding structure in the specification is the 'license file'" and that "[b]ecause a UID is assigned to each license file regardless of whether that license file contains any Licenses ..., the UID assigned to and contained within the license file properly is considered to be, a defining characteristic rather than merely a potential content of the license file." The district court therefore interpreted the license file means for storing to contain at least a UID. We agree with the district court's analysis.

■ When construing claims, a court should first look to the intrinsic evidence: the claims themselves, the specification, and, if in evidence, the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576 (Fed.Cir.1996). We hold that an examination of the relevant evidence reveals that a UID is an essential part of the structure required to perform the claimed function.

As previously discussed, the district court provided a definition of a UID in the *Markman* order. The definition is entirely correct, and the parties do not dispute the definition provided by the district court, but instead dispute whether a UID is necessary in order to perform the "storing" function of claim 55.

The '297 patent specification clearly identifies that a UID for the license file is an essential part of the structure required to perform the function of "storing at least one and up to a selectable authorized number of said licenses" performed by the license file means. For example, when a license file is loaded (*i.e.,* stored) onto a node, it is assigned a UID. It is necessary that the license file at a node be assigned a UID so that the UID can be compared with the UID written into a directory at a remote node to determine whether the particular license is in use.

Despite Globetrotter's assertions to the contrary, both embodiments disclosed in the specification utilize a UID in order to store the licenses, as well as to perform the operation of the invention as a whole. Thus, it is clear from the specification that a UID is required in both the license transfer and license pool embodiments. *See, e.g.,* '297 patent, col. 7, ll. 44–51, 65–68, col. 8, ll. 1–2. For example, in the license pool embodiment, the operating system assigns a UID to a newly created license file on the disk of a node. Since the license file may contain several licenses, the license file UID is common to all of the licenses in the license pool. The installation program then obtains the UID of the license file from the operating system, encrypts the UID of the license file, and then writes it into the license file on the disk of the node. '297 patent, col. 12, ll. 54–68. The UID is thereby stored with the license pool and the licenses in the license file on the designated node before any request to use the computer program from one of the nodes has been made. '297 patent, col. 13, ll. 1–4. Apparently, the provision of a UID for the license pool prevents the licensee from utilizing licenses stored in a pool that do not have the required UID. From this description it is clear that the license pool embodiment requires a UID in order to store a license. Moreover, there is no indication in the description that either embodiment of the invention could perform the function of storing licenses without a UID.

In addition to the written description, the drawings of the '297 patent also dem-

onstrate that a UID is required to store licenses in both embodiments of the invention. For example, the license file in the license transfer embodiment is shown in Figure 2B with a UID assigned to it. Likewise, the license file in the license pool embodiment is shown in Figure 5B with a UID assigned to it. Furthermore, none of the drawings shows an alternate method of storing a license with a license file means that would not require a UID. Therefore, we believe that the specification and drawings show that a UID is "necessary structure" in order to perform the function of storing licenses by the license file means.[1]

Lastly, Globetrotter argues that the district court's construction of the "license file means" to include a UID "essentially eviscerates the doctrine of claim differentiation." Globetrotter argues that the "interpretation adopted by the District Court completely ignores the express language of Claim 58 which depends from Claim 55." Claim 58 recites:

> 58. A license management system according to claim 55, further comprising: *means for assigning a unique identification* to each of said license file means; said license management means being effective upon location of any one of said license file means to compare the unique identification of said located license file means to the unique identification assigned to said located license file means by said assigning means....

(emphasis added). Globetrotter urges that because claim 58 expressly recites a means for assigning a unique identification, the scope of the claim must be differentiated from claim 55 under the doctrine of claim differentiation. Globetrotter's attempts to apply claim differentiation to the present situation fail.

First, dependent claim 58 recites an additional limitation that is not part of independent claim 55 from which it depends—a means for assigning a UID. Globetrotter has admitted that the "means for assigning" and "means for storing" perform different functions and are separate limitations. We agree. However, contrary to Globetrotter's assertions, the fact that claim 58 recites an additional means, the "means for assigning a UID," is entirely consistent with our interpretation that a UID is necessary to perform the storing function. The claim construction of the district court does not make "a means for assigning a UID" a limitation of claim 55, but rather only recognizes that a UID is necessary to perform the storing function consistent with 35 U.S.C. § 112, paragraph 6. While claim differentiation of course applies to a situation where a court interprets the scope of two different claims to be identical by importing the limitations of the dependent claim into the independent claim, that is not what is occurring here. Rather, this court is merely interpreting claim 55 consistent with the statutory requirements of section 112, paragraph 6 to require a UID for the license file means limitation, and is not importing a "means for assigning" function from claim 58 into claim 55. Therefore, Globetrotter's arguments concerning the applicability of claim differentiation are not persuasive.

For all of the above reasons, we hold that the claim construction regarding the "license file means" by the district court is correct.[2] On appeal, Globetrotter appar-

---

1. Elan also relies heavily on the prosecution history of the '297 patent in urging us to find that a UID is necessary in order to perform the storing function. While prosecution history may be relevant to the construction of a claim written in means-plus-function form, *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1457, 46 USPQ2d 1169, 1175 (Fed.Cir.1998) (*en banc*), Elan primarily relies on portions of the prosecution history directed at claims having different limitations than claim 55. Therefore, Elan's arguments

concerning the prosecution history are not relevant.

2. Of course, as mandated by 35 U.S.C. § 112, paragraph six, the license file means limitation of claim 55 also covers equivalents of the structures containing a UID. *See, e.g., Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1308, 46 USPQ2d 1752, 1755 (Fed.Cir.1998) (a means-plus-function limitation "must be construed 'to cover the corresponding structure, material,

ently concedes that the preliminary injunction was properly denied if we affirm the district court's construction of the "license file means" of claim 55. In light of our disposition, we need not address the "prevention function" issue.

### CONCLUSION

Because the district court properly denied the motion for preliminary injunction, we affirm.[3]

### COSTS

No costs.

*AFFIRMED.*

---

or acts described in the specification and equivalents thereof.' ").

**3.** Neither we nor the district court has decided whether Globetrotter at trial could establish infringement based on the proper construction of the license file means limitation of claim 55. We hold only that the preliminary injunction motion was properly denied because of Globetrotter's failure to establish probable success on its infringement claim

under the district court's correct construction of the license file means limitation of claim 55. However, the issue of infringement of the license file means limitation appears to be moot at the district court level since the district court has granted summary judgment upon Globetrotter on infringement of the prevention function limitation of claim 55. We leave to another day the question whether the district court's grant of summary judgment on the prevention function limitation is correct.